JohnstoN, Ch.
delivered the opinion of the Court.
It might have saved much of the present litigation, if the record had been constantly kept within the view of the ties. “The bill,” says the Chancellor who first heard the case, “purports to be filed by certain persons, on behalf of themselves and others, alleging themselves to be members of the Methodist Church called Liberty, of which it is also alleged that the said Elizabeth Burnet was a member, at the time of her death.” It was decreed that the trustee appropriate the profits of the estate, “to the uses and purposes which the Methodist Conference, to which said Liberty Church is attached, may deem most advantageous for said Church, more especially,” <fcc.
It appears to the Court that it is not competent for other parties, coming in under this record, to claim adversely to the interests thus declared in favor of the parties litigant; or to take away from them the rights settled in their favor; and that it was an error in the Master, acting on .the record before him, to entertain the question whether the'beneficiaries under the will were the Methodist Church, in its general connectional character, instead of the congregation belonging to Liberty.
The interpretation put upon the words of the will in the judgment already pronounced, was not contested at the hearing ; and therefore, it may be conceded, that it is not, beyond all question, the true construction. In a proper case, and with the proper parties for that purpose, it might be examined. But it is at least one proof of its being' the natural construction, that it was that which suggested itself to all parties to the record, and was adopted by the whole Court, without a doubt being suggested or a question raised by any party, or by the Attorney General.
*394 We have, again, examined the words of the will, in the light of a very learned and scrutinizing argument; and our opinion still is, that the construction put upon them, in the decree of the Court, was the correct and proper construction.
Wills inartificialy drawn, as this will evidently was, should be interpreted according to the common and proper meaning of the terms employed in them ; and it may safely be left to men, indiscriminately, whether in the common apprehension, the testator here did not evidently design to confer the benefits, contemplated by him, upon the particular Church, or congregation, with which his wife might happen to be connected at the’time of her death ; to be appropriated under the direction of'the annual conference having jurisdiction oyer that Church.
It has been suggested that the phraseology employed by the testator may have been intended to prevent his charity from being diverted to the support of the Methodist Protestant Church, which- Mr. Russel was endeavoring to build up, at the expense of the Methodist Episcopal Church, with which the testator was connected, and to which he was greatly attached. This is merely conjectural at best, and forms no sufficient ground for departing from the natural and obvious meaning of his words. There is no evidence that either the testator, or the draftsman of his will, had ever heard of Mr. Russel, or the schism to which his efforts tended. But if his intention was such as is suggested, the means by which he attempted to accomplish it were most unfortunate. They were neither natural nor efficacious. In that case, why did he limit the bounty which he intended for the Methodist Episcopal Church, to the contingency of his wife’s dying in connexion with it 1 Why did he not give the legacy, in express words, to the Methodist Episcopal Church ? If he intended to withhold the charity from the Protestant Methodists, why did he put it into the power of his wife to transfer it to them by connecting herself with that body ?
If the testator’s object was to benefit the Episcopal Methodists, in general, we do not perceive any rational motive for his suspending his legacy upon any contingency, whatever. But we can perceive a motive, and a very sufficient motive, why he should not only annex a condition, but the very condition he has annexed, upon the supposition that he looked to a particular congregation as his beneficiaries. We are to infer from the will, and the evidence, that he had no children. Nothing in the will, or in the circumstances, suggests the probability of future issue from his wife. She was childless and unprotected. He did not wish to confine her residence to any given locality; or to tie her down to connexion with one congregation of the Church to which she belonged. He wished to secure her that kindness which might naturally *395 bé expected to arise from pecuniary expectations on the part of those with whom she might happen to be spiritually nected; and to enable her, under any disappointment, to change her connexion, for her greater comfort.
The technical construction suggesed by the Master, we have no reason to suppose was within the testator’s contemplation. It is not favored by the structure of the will, which is plain and inartificial. To avoid the application of the word Church,, to a particular congregation, we cannot but observe that some of the witnesses have been obliged studiously to employ the term Chapel, a term which seems to be rather unusual. Notwithstanding this care, one of the witnesses seems, on one occasion, naturally and unconsciously to have fallen into the use of the word Church in the common sense; thus shewing an example (contrary to what is contended for,) of the use of that word among Methodists, in its common acceptation.
Being fully persuaded that the testator intended to indicate a particular congregation, nothing is to prevent our giving effect to his intention but some invincible necessity, arising out of the Methodist polity. Under the contingencies which have happened, the legacy, according to our construction, was intended for Liberty Church, as much so as if it had been given to it, eo nomine. Then, the question is whether if the legacy had been to this Church, by name, the government of the denomination to which it is attached is such as to prevent its receiving the benefits intended. If that were the case, it by no means follows that the Court would be bound to divert the legacy to other kindred objects. That is a doctrine which this Court would be very reluctant to adopt without a strong necessity, and very mature reflection. It has never, to our knowledge, been adopted, or recognised, in our Courts, and we are persuaded that it ought not to be adopted. But the evidence shews us that there are various ways in which the interest of the fund bequeathed to Liberty Church, may be expended, from time to time, for her benefit; and so much of it as cannot be thus expended may be suffered to accumulate for her benefit, until contingencies arise for its expenditure for her advantage.
The Master having put a wrong construction on the will, and recommended a scheme for administering the trusts for the benefit of the Church at large, and not for the benefit of Liberty church, the beneficiaries intended, his report must be set aside, and the case sent down, (under the consent decree, which we are bound to respect,) that he may receive proposals according to the latter view, and report them to the Circuit Court in Equity for its consideration and approval.
We do not intend, by any thing we have said, to indicate what description of benefits, spiritual or temporal, are most *396 consonant to the will; but simply that, in some way or other, tjjey. shoxiici be advantageous to Liberty Church.
It is ordered that the decree be reversed, and the report recommitted to the Master for the purposes aforesaid.
It is also ordered that the case be remanded to the Court of Appeals in Equity, from whence it came, for the purpose of making any further orders that may be deemed proper in the case.
O’Neall, J. Evans, J. Wardlaw, J. Withers, J. & Caldwell, Ch. concurred.
Dargan, Ch. gave no opinion, having been of counsel in the case.

Decree reversed

The Court of Appeals in Equity ordered as follows.
Johnston, Ch. The Court of Errors having determined certain questions in this case, and recommitted the report of the Master, as in their decree is stated, and having remanded the case to this Court for further orders,
It is ordered, that the trustee, E. Leggit, do account before the Master for the trust fund; and that he do lay before the Master proposals for investing said fund; and that the Master do report what, in his judgment (upon evidence to be heard by him) is the most profitable, safe and suitable mode of investing said fund. The report to be made to the Circuit Court for its consideration.
Dunkin, Ch. and Caldwell, Ch. concurred.
Dargan, Ch. having been of counsel, gave no opinion.